[Starr Piano Company v. Baker.]

# Starr Piano Company *v.* Baker.

## *Detinue.*

(Decided April 17, 1913.  Rehearing denied May 8, 1913.
62 South. 549.)

1. *Sales; Conditional Sales; Bona Fide Purchaser.*—The term, "bona fide purchaser" within section 3394, Code 1907, should be given the meaning, which it has in equity jurisprudence, where the doctrine originated, there being nothing on the face of the statute to indicate a legislative intent, either to narrow or enlarge such meaning.

2. *Same; Who Is.*—To constitute one a bona fide purchaser, and entitle him to protection as such, he must have purchased in good faith the legal title to the property, as distinguished from an equitable title; must have parted with value, as a consideration therefor by paying money or other valuable thing, or by assuming a liability or incurring an injury, and must have had no notice and known of no fact sufficient to put him on inquiry as to the title of a person other than his vendor, either at the time of his purchase, or before the payment of the consideration.

3. *Same; Burden of Proof.*—One claiming as a bona fide purchaser of property has the burden of proving that he purchased the legal title in good faith, and that he parted with value as a consideration therefor, but the burden of proving that he had notice or knowledge of facts sufficient to put him on inquiry as to the title of the third person, is on the person seeking to defeat his claim.

4. *Pledges; Priorities; Bona Fide Purchaser.*—One to whom a conditional vendee of property pledges it as a security for a debt, and who receives the property in good faith, and for value, is a bona fide purchaser within section 3394, Code 1907, unless the conditional contract is in writing and recorded; for, although to constitute such a purchaser, he must have purchased the legal title as distinguished from the equitable, it is not necessary that he should be an actual purchaser in the ordinary acceptation of the term, nor that he should have acquired the legal title in the technical sense of those words, it being sufficient if he has acquired a legal interest, lien or estate cognizable in a court of law, as distinguished from a right or interest recognized only in a court of equity.

5. *Same.*—One to whom property sold conditionally is pledged as security for a pre-existing debt, is not entitled to the protection of section 3394, Code 1907, even though, induced by the security, he voluntarily extends the debt without any agreement to do so, since one claiming such protection must have parted with a valuable consideration, either in money or in property, or have sustained some injury, or assumed some liability; however, where a pledgee, in consideration of such security agreed to extend the time of payment, he thereby parted with value and was entitled to protection.

29 CA

6. *Same; Redemption; Persons Entitled to Redeem.*—A conditional vendor of personal property who fails to record his contract, is entitled to redeem the property from a party to whom the conditional vendee had pledged it as a security for a debt, by paying the debt with interest at any time before a sale by the pledgee.

7. *Evidence; Parol; Extension of Time.*—A parol agreement by a creditor to extend the time of payment of a debt, is valid, if based upon a sufficient consideration, without giving any new or additional obligation for the debt.

8. *Contracts; Consideration; Extending Time of Payment.*—An agreement by a creditor to extend the time of payment of a debt for a reasonable time is a sufficient consideration for a contract; for, although the extension must be definite, an extension for a reasonable time is capable of being made definite.

9. *Same; Construction; Stipulations as to Time.*—An agreement by a creditor to extend the time of payment of a debt until the debtor is able to pay, will be construed as an agreement to extend it for a reasonable time, and not to discharge a debt forever unless the debtor subsequently becomes able to pay.

10. *Same; Action; Time to Begin.*—Where a creditor has agreed to extend the time of payment of a debt for a reasonable time, on a present consideration, he is not entitled to an action for the collection of the debt until the expiration of such time.

11. *Pleadings; Amendment; Unnecessary.*—Where the complaint in detinue followed the code form and was, therefore, sufficient for all purposes, no error or injury intervened in striking an addition thereto offered by way of amendment.

12. *New Trial; Newly Discovered Evidence.*—Where the alleged newly discovered evidence could, and by proper diligence would have been discovered and introduced on the original trial, it did not afford grounds for a new trial.

13. *Appeal and Error; Review; Extent.*—In determining whether the court properly granted the affirmative charge, alleged newly discovered evidence set up as a ground for new trial, cannot be considered on appeal.

14. *Same; Assignments; Necessity.*—The failure of a judgment in replevin to assess the alternate value of the property, is a mere irregularitly not rendering the judgment void, and will not bring about a reversal of the judgment, if it is not assigned as error.

APPEAL from Pike Circuit Court.

Heard before Hon. H. A. PEARCE.

Detinue by the Starr Piano Company against D. A. Baker. Judgment for defendant and plaintiff appeals. Affirmed.

RUSHTON, WILLIAMS & CRENSHAW, and W. E. GRIFFIN, for appellant. The court erred in refusing to allow the

[Starr Piano Company v. Baker.]

amendment.—Sec. 5367, Code 1907. The affirmative charge should never be given where there is a conflict in the evidence, or where unfavorable inferences can be drawn.—*L. & N. v. Lancaster,* 121 Ala. 471; *Holmes v. B. R. L. & P. Co.,* 140 Ala. 208. The question of good faith was under the testimony in this case, a question for the jury, as was the question of the amount of the debt owing by Vaughan to Baker. The defendant was not a purchaser for value.—*Reid v. Bank of Mobile,* 70 Ala. 199; *Fenouille v. Hamilton,* 35 Ala. 319. If each party holds an equity, the party holding the legal title will prevail.—Storey Eq. Jur. sec. 64.

A. B. FOSTER, for appellee. It is conceded that Baker was a pledgee, and if the other ingredients exist he was a bona fide purchaser, and protected against plaintiff's claim.—Sec. 3394, Code 1907; 31 Cyc. 814. A pledgee is protected and becomes a purchaser where he receives the property as security on a pre-existing debt, with an agreement to extend the time of payment.—31 Cyc. 814; *Alston v. Marshall,* 112 Ala. 638; *Randolph v. Webb,* 116 Ala. 135; *Whitfield v. Riddle,* 78 Ala. 99; *Downing v. Blair,* 75 Ala. 216. The contract must be construed as an agreement to pay within a reasonable time.—*Griel v. Solomon,* 82 Ala. 91; *Torrey v. Kraus,* 146 Ala. 200. No diligence is shown as to the newly discovered evidence, and hence, it cannot be made a basis for a new trial.

THOMAS, J.—Section 3394 of the Code, changing the rule declared in *Fairbanks v. Eureka Co.,* 67 Ala. 109, makes contracts for the conditional sales of personal property void as to the condition against purchasers for a valuable consideration, mortgagees, and judgment creditors without notice, unless such contract is in

writing and recorded as in the section prescribed.  The
present suit is an action of detinue in which appellant
(plaintiff below) claims title to the property, one piano,
under such a contract, which, while in writing, does
not appear from the record here to have ever been re-
corded.  It was executed on December 8, 1905, by one
J. B. Vaughn, the purchaser of the piano, who at the
time lived in Coffee county, Ala., where possession was
delivered to him then, and where he kept the property
until January, 1910, when he moved it with his family
to Troy, in Pike county, Ala.  Some time after the re-
moval of the piano to Troy, Vaughn placed it there in
the home of D. A. Baker, the appellee here and defend-
ant below, where Vaughn, his wife and children, board-
ed during the months of January and February, 1912,
and until about the 10th of March, 1912, whereupon
they moved away from defendant's house.  At the time
of the removal Vaughn owed the defendant a balance
of about $50 on the board of himself and family, and
left the piano, of the value of $175, at defendant's house.
Vaughn, as a witness for plaintiff, testifies that he then
said to defendant:  "Well, I owe you, but I am not in
shape to pay you at present.  I expect to move, but will
leave the piano over there (it is there now) until I get
able to pay you and I will pay you"—and that defend-
ant agreed to this.  Defendant testified on this sub-
ject that:  "When he (Vaughn) left he told me I could
keep the piano (as security) for the debt, and that he
would take it up; that if he could he would pay me
when he got able, and so I agreed to extend it for him
until he was able to pay it.  That is how I claim the
piano—under that agreement with Mr. Vaughn."  Some
40 days or more thereafter the plaintiff, to whom there
is an admitted balance due on the contract for the con-
ditional sale of the piano to Vaughn, made demand on

Baker for the piano and, upon his refusal to deliver possession, brought this suit. At the trial he introduced all proof necessary and requisite to the making out of a prima facie case. The defendant contended that he was a bona fide purchaser of the property from Vaughn, relying on the testimony of himself and Vaughn, which we have set out and which was not contradicted, to support his claim. The lower court gave the general affirmative charge in his behalf, and the question for review here is whether or not the facts recited are such as to constitute the defendant a bona fide purchaser within the meaning of said section 3394 of the Code, so as to protect him against the title to the piano retained by plaintiff in the conditional sale contract with said Vaughn.

The doctrine of bona fide purchaser originated in equity jurisprudence, and in the construction of the meaning of that term when employed in recording or registry statutes, as is here under consideration, we are relegated to that source for guidance, in the absence of a contrary intent apparent on the face of the statute. We find nothing on the face of this statute indicating an intent on the part of the Legislature to narrow or enlarge the meaning of the term beyond its usual significance, as used in that branch of the law.

There it has been held that, in order to constitute one a bona fide purchaser and entitle him to protection as such, it is essential: "(1) That he should be the purchaser of the legal, as distinguished from an equitable, title to the property; (2) that he should have purchased the same in good faith; (3) that he should have parted with value as a consideration therefor by paying money or other thing of value, or by assuming a liability or incurring an injury; (4) that he should have had no notice, and should have known no fact

sufficient to put him on inquiry as to the plaintiff's title, either at the time of his purchase or at or before the time he paid the purchase money or otherwise parted with value."—*Craft v. Russell,* 67 Ala. 9; *Shook v. S. B. & L.,* 140 Ala. 579, 37 South. 409.

The burden of proof as to the first three propositions rests upon the person claiming the protection, and as to the fourth upon him who seeks to defeat the claim.— *Barton v. Barton,* 75 Ala. 400.

There is nothing in the evidence tending to show that the defendant had any notice either actual or constructive, of plaintiff's retention of title, or knew any fact sufficient to put him on inquiry until the demand was made for the possession of the piano, as stated, which was some 30 days or more after the alleged agreement between defendant and Vaughn. Hence we are to test out the question as to whether the defendant is a bona fide purchaser by the first three requisites last stated.

The first of the three is that he should have purchased "the legal, as distinguished from an equitable, title." This does not mean that it is necessary that he should have become an actual purchaser in the ordinary acceptation of the term, since the doctrine has frequently and uniformly been so extended as to include mere mortgagees; nor does it mean, in requiring that he should have acquired "the legal title," to use these latter words in their technical sense. As there employed, these words import merely a legal interest, lien, or estate in the property, such as cognizable in a court of law, as contradistinguished from such interest or right in the property as is only recognized in a court of equity. The agreement under which Vaughn left the property with the defendant amounted to nothing more nor less than a common-law pledge, which is generally

defined to be "a bailment of goods by a debtor to his creditor to be kept by him till his debt is discharged."— 22 Am. & Eng. Ency. Law, p. 842; Am. Dig. Cen. Ed., vol. 40, p. 6. It conferred upon defendant a legal, as distinguished from an equitable, interest in the property—a right to sue for its conversion or in detinue for its recovery, if his possession were disturbed (*Noles v. Marable*, 50 Ala. 366; *Am. Pig Iron Co. v. German*, 126 Ala. 238, 28 South. 603, 85 Am. St. Rep. 21; 31 Cyc. 809), and an implied legal right to sell the property, upon maturity of the obligation, for its satisfaction, after demand made for payment and notice given of sale.—Code, § 3303; *Glidden v. Mechanics' Nat. Bank*, 53 Ohio St. 588, 42 N. E. 995, 43 L. R. A. 737, and notes. Outside of this jurisdiction the courts have expressly, in proper cases, extended the protection of the doctrine of bona fide purchaser to pledgees.—Am. Dig. Cen. Ed., vol. 40, p. 62; 31 Cyc. 811-812, and notes where the authorities are collected; *Trust Co. v. Gray*, 12 App D. C., 288. And in this state, in the case of *Barnett v. Warren*, 82 Ala. 561, 2 South. 459, while the court had no occasion to apply it, yet, in an appropriate connection, it recognized it as applicable to persons with a legal interest, less than the legal title, by employing, through Stone, J., the following language: "As to this right of Lehman, Durr & Co. [who were cotton factors, having advanced money on the cotton held], being a lien, coupled with the actual possession of the thing on which it rested, they were purchasers to the extent of the advance they made, which would be subordinated only to an outstanding legal title, or to a paramount equity of which they had notice." Here, however, such a lien would not be subordinated to the outstanding legal title of a person in the position of plaintiff, on account of a failure to record the conditional sale contract as re-

quired by statutes. The defendant, then, as a pledgee of the property, is entitled to protection as a bona fide purchaser, provided the second and third requisites are met by the proof.

It is not insisted by appellant that there was any actual mala fides on the part of defendant in receiving the pledge; hence we pass over a consideration of the second, and come lastly to the third, requisite, which involves the question as to whether or not the defendant at the time of receiving the pledge parted with such a consideration as entitles him to protection as an innocent purchaser. The pledge, it will be observed, was to secure a pre-existing debt, which alone would not be adequate in law to secure the protection here claimed against the real owner of the property, since, in order to receive such protection, the pledgee must at the time have parted with a valuable consideration, either in money or other property, or have assumed some liability or sustained some injury.—*Craft v. Russell, supra; Sweeney v. Bixler,* 69 Ala. 540; *First Nat. Bank v. Johnston,* 97 Ala. 662, 11 South. 690. However, defendant contends that he not only accepted the pledge as security for his pre-existing debt, but in addition he accepted it under an agreement with Vaughn to extend the time of payment of that debt, and that thereby he changed his position for the worse in that he is prevented from proceeding even on the original debt until the arrival of the time limit of the agreed forbearance. Our Supreme Court have repeatedly held that where a mortgagee, who receives from his debtor a mortgage to secure an antecedent debt, without notice of previous liens on the property, is entitled to protection as an innocent purchaser, where, as a present consideration for the security given, he agrees to an extension of time for the payment of the debt.—*Alston. v. Marshall,* 112

Ala. 638, 20 South. 850; *Whitfield v. Riddle,* 78 Ala. 99; *Downing v. Blair,* 75 Ala. 216; *Craft v. Russell,* 67 Ala. 9. But a mere voluntary extension of the debt, though induced by the security given, in the absence of a contemporaneous agreement to extend, will not suffice to make the holder of the security a bona fide purchaser, since without such agreement he is not precluded from recourse to his original cause of action whenever he may see fit to resort to it (7 Cyc. 899), and has therefore sustained no detriment or disadvantage as a present consideration parted with for the security given. In other words, in such event, he receives the benefit of the additional remedy afforded by the security without surrendering any right whatever under the original obligation.—*Fenouille v. Hamilton,* 35 Ala. 319; *Jones v. Robinson,* 77 Ala. 505; *First Nat. Bank v. Johnson,* 97 Ala. 661, 11 South. 690; *Vann v. Marbury,* 100 Ala. 441, 14 South. 273, 23 L. R. A. 325, 46 Am. St. Rep. 70; *Sweeney v. Bixler,* 69 Ala. 540; 4 Am. & Eng. Ency. Law, 295; 23 Am. & Eng. Ency. Law, 493.

But, when he obtains the security in consideration of an agreement to extend the time of payment of the original debt, he is legally bound not to proceed in the collection of that debt until the extension agreed upon has expired; hence suffers this detriment without consequent advantage, if another is permitted to take from him the security he has received for the agreement.— 7 Cyc. 934. It is not required that such agreement be in writing or that a new obligation for the debt be given; a parol agreement for the extension is sufficient. —*Ferguson v. Hill,* 3 Stew. 485, 21 Am. Dec. 641; 7 Cyc. 898.

Here the undisputed evidence shows that the defendant, as a consideration for the pledge, contemporaneously verbally agreed to extend the time of the payment

of the debt until Vaughn was "able to pay" it. This is tantamount to an agreement to extend it for a "reasonable time."—*Crass v. Scruggs,* 115 Ala. 267, 22 South. 81; *Glasscock v. Glasscock,* 66 Mo. 630. From the former of the above-cited cases we quote as follows: "In *Nunez v. Dauiel,* 19 Wall. 560 [22 L. Ed. 161], the action was upon an instrument acknowledging indebtedness for services rendered, containing this clause: 'This we will pay as soon as the crop can be sold, or the money raised from any other source, payable with interest.' The construction the instrument received was that it was a promise to pay as soon as the crop was sold, or the money was received from any other source, or after the lapse of a reasonable time for the sale of the crop, or the derivation of the money from other sources; that it was not intended if the crop was not raised, * * * or the money was not realized from other sources, that the debt should not be paid."

The cases of *Griel v. Solomon,* 82 Ala. 91, 2 South. 322, 60 Am. Rep. 733, and *Kraus v. Torry,* 146 Ala. 548, 40 South. 956, cited in briefs, holding that the promise of a bankrupt, after his discharge, to pay his creditor when he was able to do so was a conditional promise and could not be enforced except upon proof by the creditor that the bankrupt had become able to pay, have no application to the facts of the present case, where the debt held by defendant against Vaughn is absolute and not conditional, as there. Such words, when used under the circumstances here confronting us, mean that the debtor will pay that obligation within a "reasonable time" (*Crass v. Scruggs, supra*), and certainly cannot be construed as intending to mean that the debt was to terminate and become extinct, and was never to be revived unless and only in the event and upon the condition that the debtor became able at some

future time to pay it. The case of the bankrupt is quite different; the debt against him has been discharged by the bankrupt proceedings. He is at liberty to let it so remain or to revive it, and this either absolutely or conditionally. If he does the latter only, the promise is not enforceable until the condition to its performance has been removed by the happening of the event fixed in the promise. Hence the meaning of the words "until able to pay" used in such connection, considered in the cases mentioned or cited in brief, is quite different from their meaning as here used. Here the agreement to extend the payment of the debt until Vaughn is able to pay we construe to be only an agreement to extend it for a reasonable time, and not an agreement to discharge the debt forever unless Vaughn becomes able to pay at some future time. The latter construction would amount to holding that the parties intended by the transaction a sale from Vaughn to defendant of a $175 piano in settlement and discharge of a $50 debt, with only a bare right left in Vaughn to redeem if he ever got able to pay the amount of the debt, and that, if not, the piano was to belong absolutely to defendant. The sensible construction is that it was a mere pledge of the piano to secure the extension for a reasonable time of an existing debt.

In Tiedeman on Commercial Paper, § 175, we find this language: "Another common kind of consideration for the support of commercial paper, and of obligations issuing out of such paper, is an agreement to forbear or extend the time of payment. Whether an agreement to forbear for an indefinite period, as for 'a reasonable time,' is a sufficient consideration has been differently decided by the courts, although the weight of authority is in favor of its being sufficient. Our own courts seem never to have had the exact question under considera-

tion; and though we find in some of our decisions the use of such expressions as "there must be a definite extension," used in connection with a discussion of the subject of forbearance in such cases (*Randolph v. Webb,* 116 Ala. 135, 22 South. 550; *Snellgrove v. Evans,* 145 Ala. 603, 40 South. 567; *Sweeney v. Bixler,* 69 Ala. 540; *Vann v. Marbury,* 100 Ala. 438, 14 South. 273, 23 L. R. A. 325, 46 Am. St. Rep. 70; *Bank v. Johnston,* 97 Ala. 661, 11 South. 690), yet this does not militate against the view we here entertain that an agreement for an extension for "a reasonable time" is sufficient. While "a reasonable time" is indefinite in a sense, still it is capable of being made definite, and the doctrine of "id certum est quod certum reddi potest" should and, we hold, does obtain in such a case. See in connection *Bank v. Johnston,* 97 Ala. 661, 11 South. 690; *Glasscock v. Glasscock,* 66 Mo. 630.

A creditor who, for a present consideration, has agreed to extend the time of payment of a debt for "a reasonable time" can no more maintain a suit against the debtor to enforce the collection of such debt before the expiration of such time than he could so proceed, in 30 days, against a debtor to whom he had previously, upon such consideration, agreed to extend the debt for 60 days. In each case it is clear that the debtor could plead in defense the agreement and abate the suit until the full time had expired.—*Ferguson v. Hill,* 3 Stew. 485, 21 Am. Dec. 641; *Glasscock v. Glasscock,* 66 Mo. 630. If, then, in each case the creditor sustains the same detriment or injury as the result of the agreement, why should he not be equally protected in the case as in the other, and be permitted to retain that which he has received as a consideration for such agreement? We are unable to discover any difference in principle between the two cases. Of course, if a creditor upon

receiving additional security from his debtor for an existing debt at the time merely promised to be lenient, as was considered in Body v. Jewsen, 33 Wis. 402, and Atlantic Bank v. Franklin, 55 N. Y. 235, the matter would be different, since there it is left to the creditor to determine what the leniency should be, and he is not thereby prevented from proceeding the next day, or in a shorter time, to enforce his debt. Consequently he has not sustained that detriment requisite to his protection as a bona fide purchaser.

We are therefore of opinion that the lower court did not err in giving the general affirmative charge for defendant. The plaintiff, however, as owner of the property, after he redelivers it to defendant as required by the replevy bond, would have the same right to redeem it that Vaughn would have, which is at any time before a sale of it under the pledge by paying the debt and interest thereon to defendant.—National Safe Dep. Co. v. Gray, 12 App. D. C. 276.

In dealing with the case, we have not, of course, considered the "newly discovered evidence" for plaintiff set out in and as a predicate for his motion for a new trial, which evidence, however, appellant's counsel, in his brief here, treats as though it were evidence introduced on the main trial. It does not so appear, and is consequently to be ignored in testing the correctness of the action of the court in granting the affirmative charge. The motion for the new trial was properly overruled, as the alleged newly discovered evidence, upon which it was based, could and would by proper diligence have been discovered and introduced on the original trial.

The only other error assigned is the action of the court in striking the addition to plaintiff's original complaint, offered by way of amendment. The original complaint is in detinue, following the Code form, and

was sufficient for all purposes; hence there was neither error nor injury in striking the addition thereto, which, so far as the pleading was concerned, contained entirely immaterial matter.

The judgment fails to assess the alternate value of the property as required by section 3781 of the Code. This failure does no render the judgment void (*Hines v. Tribble*, 4 Ala. App. 238, 57 South. 265, citing cases), but is a mere irregularity, and, not being assigned as error, it will not reverse the judgment.—*Clem v. Wise*, 133 Ala. 409, 31 South. 986. Besides, we do not see how the failure to assess such value could be of injury to appellant, who was plaintiff below, and is in possession of the property under a replevy bond, which can be fully discharged by delivering the property in pursuance of the judgment and as required by law. The defendant in such a case is the only party that could probably be injured by the failure to assess the alternate value of the property. However, if the error had been assigned by appellant, it would have reversed the case under the authority of *Jernigan v. Willoughby*, 159 Ala. 650, 48 South. 812.

The judgment of the lower court is affirmed.

Affirmed.